UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| NOVELPOINT LEARNING LLC,<br><br>       Plaintiff and Counterclaim-<br>       Defendant,<br><br>  v.<br><br>LEAPFROG ENTERPRISES, INC. and<br>VTECH ELECTRONICS NORTH<br>AMERICA, LLC,<br><br>       Defendants and Counterclaim-<br>       Plaintiffs,<br><br>  and<br><br>VTECH HOLDINGS LIMITED and<br>SMALL WORLD TOYS,<br><br>       Defendants. | Civil Action No. 6:10-cv-229<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION TO TRANSFER**
**VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................................... 2

        A.      Documents, Witnesses and Other Evidence Relevant to the Accused
                Products Are Located In and Near the Northern District of California ................. 2

        B.      Plaintiff Has No Relevant Connection to the Eastern District of Texas ................. 4

III.    LEGAL STANDARD ..................................................................................................... 6

IV.     ARGUMENT ................................................................................................................. 7

        A.      This Action Could Have Been Brought in the Northern District of
                California ............................................................................................................... 7

        B.      The Private Interest Factors Favor Transfer to the Northern District of
                California ............................................................................................................... 8

                1.      The Relative Ease of Access to Sources of Proof ....................................... 8

                2.      The Cost of Attendance for Willing Witnesses ........................................ 11

                3.      The Availability of Compulsory Process to Secure the Attendance
                        of Witnesses .............................................................................................. 12

                4.      All Other Practical Problems That Make Trial of a Case Easy,
                        Expeditious, and Inexpensive ................................................................... 12

        C.      The Public Interest Factors Also Favor Transfer to the Northern District of
                California ............................................................................................................. 13

                1.      The Local Interest in Having Localized Interests Decided at Home ........ 13

                2.      The Administrative Difficulties Flowing From Court Congestion ........... 14

                3.      The Familiarity of the Forum With the Law That Will Govern the
                        Case ........................................................................................................... 15

                4.      The Avoidance of Unnecessary Problems of Conflicts of Laws or
                        In the Application of Foreign Law ........................................................... 15

V.      CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Gulf Oil Corp. v Gilbert*, 330 U.S. 501 (1947) ............................................................................... 6

*HTI IP, LLC v. DriveOK, Inc.*, No. 6:09-CV-370, 2010,
    U.S. Dist. LEXIS 82691 (E.D. Tex. Aug. 4, 2010) ........................................................... passim

*i2 Technologies, Inc. v. Oracle Corp.*,
    No. 6:09-cv-00194, 2010 U.S. Dist. LEXIS 84250 (E.D. Tex. Aug. 17, 2010) ........................ 8

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009).................................................... 7, 8, 11, 14

*In re Horseshoe*, 337 F.3d 429 (5th Cir. 2003).......................................................................... 12

*In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009)................................................................... 14

*In re TS Tech United States Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ............................................ 6

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. Tex. 2008)................................. 6, 7, 11, 12

*In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010)............................................... 10, 13

*Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325 (E.D.N.Y. 2006) ...................... 11

*Rich v. S. Gulf Operators*, 879 F. Supp. 49 (E.D. Tex. 1995) ..................................................... 13

*Software Rights Archive, LLC v. Google, Inc.*,
    No. 2:07-CV-511-CE, 2010 U.S. Dist. LEXIS 73972 (E.D. Tex. July 22, 2010).......... 7, 10, 15

**STATUTES**

28 U.S.C. § 1404(a) ................................................................................................... 1, 6, 7, 13

Defendants LeapFrog Enterprises, Inc. ("LeapFrog"), VTech Holdings Limited, and VTech Electronics North America, LLC (collectively, "VTech") jointly move pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Northern District of California.[1]

## I.  INTRODUCTION

For the convenience of the parties and in the interest of justice, this case should be transferred to the Northern District of California because none of the parties to this lawsuit have any relevant connection to the Eastern District of Texas and the Northern District of California is a clearly more convenient forum.

Two of the Defendants have their headquarters in California, with LeapFrog's being within the proposed transferee district, the Northern District of California, and Small World's being within the adjacent Central District of California.  The vast majority of LeapFrog and Small World's documents, witnesses and other evidence relevant to the design, sales and marketing of their accused products are located in California.  There are also several potential non-party witnesses in California.  VTech's documents, witnesses and other evidence relevant to the design, sales and marketing of its accused products are located in Illinois, Hong Kong and China.  None of the Defendants have any relevant documents, witnesses or other evidence in the Eastern District of Texas.

While Plaintiff NovelPoint Learning LLC ("NovelPoint" or "Plaintiff") holds itself out as a Texas corporation based in the Eastern District, closer inspection reveals that it is merely a shell created just four months before this action was filed to manipulate the propriety of venue. Indeed, NovelPoint does not appear to transact any business or have any actual office or

---

[1] Defendant Small World Toys ("Small World") does not join this motion, but supports it and has supplied a declaration in support of this motion.  (Ex. Z, De-Dunlop Decl. at ¶ 1.)  Collectively, LeapFrog, VTech and Small World are referred to herein as "Defendants."

employees in the Eastern District; its only connection to the District is that it happens to share an address with the Allen, Texas residence of its attorney-officer, Mr. Sanjay Pant.

Moreover, because NovelPoint does not practice the patent asserted in this case, its relevant evidence, if any, is likely limited to that possessed by the named inventor of the patent, who lives in Florida, and the prosecuting attorney of said patent, who lives in Illinois.  Therefore, to the extent that NovelPoint has transported copies of relevant evidence into the Eastern District, or claims to have a substantive presence there, it is clear that any such presence or evidence is a venue-manipulating fiction that is entitled to no weight in the transfer analysis.

In light of the foregoing, Defendants respectfully request that this case be transferred to the Northern District of California.

## II.      FACTUAL BACKGROUND

### A.      Documents, Witnesses and Other Evidence Relevant to the Accused Products Are Located In and Near the Northern District of California

LeapFrog's worldwide headquarters is in Emeryville, California, which is in the Northern District of California.  (Ex. Y, Lattuga Decl. at ¶ 2.)  The design and engineering team for LeapFrog's accused products, as well as LeapFrog employees with knowledge of all relevant sales, revenues, and profits for said products, all work from LeapFrog's Emeryville offices.[2]  (*Id.* at ¶¶ 5-6.)  LeapFrog has approximately 350 employees in the state of California, with all but two of those working at LeapFrog's Emeryville headquarters.[3]  (*Id.* at ¶ 3.)  Numerous former employees who worked on the design and engineering of the accused products reside in or around Northern California.  (*Id.* at ¶ 7.)  All documents relating to the design, sales, marketing

---

[2] NovelPoint accuses LeapFrog's "Tag" and "Tag Junior" products, VTech's "Bugsby" products, and Small World's "CrocoLearn" products of infringing United States Patent No. 6,330,427 ("the '427 patent").  (Dkt. No. 26, Second Amended Complaint, ("Compl."), at ¶¶ 15-17.)

[3] The remaining two LeapFrog employees work out of a warehouse in the Central District of California. (Ex. Y, Lattuga Decl. at ¶ 3.)

2

and distribution of the accused products, as well as all financial documents relating to these products, are located at LeapFrog's Emeryville offices.  (*Id.* at ¶ 8.)  LeapFrog does not have any offices, facilities, or distribution facilities in Texas, nor does LeapFrog maintain any inventories in Texas.[4]  (*Id.* at ¶ 9.)  LeapFrog keeps no documents in Texas.  (*Id.* at ¶ 8.)  LeapFrog has no facilities or employees in the Eastern District of Texas and is not aware of any relevant documents, witnesses or other evidence there.  (*See id* at ¶¶ 7-9.)  LeapFrog's accused "Tag" and "Tag Junior" products are sold throughout the United States.  (*Id.* at ¶ 4.)

Small World is located in Torrance, California, which is in the Central District of California.  (Ex. Z, Dey-Dunlop Decl. at ¶ 2.)  Small World is an importer and distributor of toys and acquired the accused "CrocoPen" products from a Hong Kong company who designed and manufactured the products.  (*Id.* at ¶¶ 2, 5-6.)  Any documents within Small World's custody or control regarding the design, sales and/or distribution of the accused products, as well as all financial documents regarding those products, are maintained at Small World's California offices.  (*Id.* at ¶ 7.)  With the exception of certain corporate officers that are affiliated with the corporate owner of Small World who work in New York, all of Small World's employees work in the California offices and live nearby.  (*Id.* at ¶ 3.)  Former officers of Small World's predecessor company likely still reside in California.  (*Id.* at 5.)  Small World has no facilities or employees in Texas and does not maintain any inventories in Texas.[5]  (*Id.* at ¶¶ 8.)  Although no

---

[4] LeapFrog has three home-based employees in Austin, Texas.  (Ex. Y, Lattuga Decl. at ¶ 10.)  These employees perform sales activity for LeapFrog's business segment that sells to schools and are not believed to possess any information or documents relevant to this action.  (*Id* at ¶¶ 8-10.)  LeapFrog previously leased an office in Austin Texas, but no longer occupies it and subleases the space to another company.  (*Id* at ¶ 9.)  In addition to not being relevant to this case, these witnesses and this facility are in the Western District of Texas, not the Eastern District.  *See HTI IP, LLC v. DriveOK, Inc.*, No. 6:09-CV-370, 2010 U.S. Dist. LEXIS 82691, at **15-16 (E.D. Tex. Aug. 4, 2010) (Davis, J.) (discounting the existence of an Austin-based witness in the transfer of venue analysis).
[5] Small World has affiliations with independent sales representatives throughout the country, including a Dallas, Texas based sales group.  (Ex. Z, Dey-Dunlop Decl. at ¶ 4.)  These sales representatives are not believed to possess relevant information.  (*Id.* at ¶ 7.)

3

longer sold in the U.S. by Small World, the accused "CrocoPen" products were previously sold throughout the United States.  (*Id.* at ¶ 4.)

VTech Holdings is headquartered in Hong Kong and VTech North America is headquartered near Chicago, Illinois.  (Ex. AA, Pang Decl. at ¶ 4; Ex. BB, To Decl. at ¶ 5.)  All of VTech's documents, witnesses and other evidence relevant to the design, sales and marketing of the accused "Bugsby" products are located in Illinois, Hong Kong and China.  (Ex. BB, To Decl. at ¶¶ 6-9.)  VTech has no facilities or employees in Texas and is not aware of any relevant documents, witnesses or other evidence in Texas.  (Ex. AA, Pang Decl. at ¶¶ 6-7; Ex. BB, To Decl. at ¶¶ 11-12.)  VTech's accused "Bugsby" products are sold throughout the United States. (Ex. BB, To Decl. at ¶ 3.)

### B.      Plaintiff Has No Relevant Connection to the Eastern District of Texas

Plaintiff was organized as Intuit Educational Ventures LLC on January 6, 2010 with a single Managing Member, Gautham Bodepudi.  (Stringfield Decl. at ¶ 4.)  On February 26, 2010, Plaintiff added two additional Managing Members: Lillian Woung and Sanjay Pant.  (*Id.* at ¶ 5.) In an assignment executed on March 9, 2010 and recorded on April 16, 2010, Joel Tabachnik, the sole inventor of the asserted '427 patent, assigned his interest in the '427 to Plaintiff.  (*Id.* at ¶ 6.)  Shortly thereafter, on April 30, 2010, Plaintiff filed the original complaint in this action. (Dkt. No. 1.)   On May 7, 2010, Plaintiff changed its name to NovelPoint Learning LLC, (Stringfield Decl. at ¶ 7), and filed its First Amended Complaint a week later on May 14, 2010. (Dkt. No. 7.)

NovelPoint alleges it is "a Texas limited liability company with its principal office located in the Eastern District of Texas, at 1117 Sophia Street, Allen, Texas 75013."  (Compl. at ¶ 3.)  One of its three officers, Mr. Pant is an attorney licensed in the State of Texas whose

registered business address is 1117 Sophia Street, Allen, Texas 75013.  (Stringfield Decl. at ¶ 8.) On information and belief, 1117 Sophia Street is Mr. Pant's personal residence.  (*Id.* at ¶ 9.)

Plaintiff's founding officer, Mr. Bodepudi, is also an attorney.   (*Id.* at ¶ 10.) Mr. Bodepudi is licensed in the State of Illinois and lists "IP Edge LLC" at 19 W. 010 Chateaux N., Oak Brook, Illinois 60523 as his registered business address.[6]  (*Id.*)  On information and belief, 19 W. 010 Chateaux N. is Mr. Boepudi's personal residence. (*Id* at ¶ 11.)

Plaintiff's third and final officer, Ms. Woung, is an attorney who lists 2107 Glenn Lakes Lane, Missouri City, Texas as her address.[7] (*Id.* at ¶ 12.)  On information and belief, 2107 Glenn Lakes Lane is Ms. Woung's personal residence.  (*Id* at ¶ 13.)

The sole named inventor of the asserted '427 patent, Joel B. Tabachnik, resided in Boca Raton, Florida during the patent's prosecution before the United States Patent and Trademark Office ("USPTO").  (*Id.* at ¶ 17.)  On information and belief, Mr. Tabachnik still resides in the Boca Raton, Florida area.  (*Id.* at ¶¶ 18-19.)

The attorney who prosecuted the asserted '427 patent, William F. Prendergast, practiced at the Chicago, Illinois office of Brinks Hofer Gilson and Lione during the entire prosecution of the '427 patent.  (*Id.* at ¶ 20.)  Although Mr. Prendergast has since been disbarred in Illinois for failing to prosecute clients' patents, fabricating documents and making false statements to clients, other attorneys and the USPTO, he is believed to still reside in Illinois.  (*Id.* at ¶¶ 21-24.) The Chicago office of Brinks Hofer is still listed as the attorney of record for the '427 patent. (*Id.* at ¶ 25.)

---

[6] IP Edge's website, www.ip-edge.com/team/, lists Plaintiff's same three officers, Mr. Bodepudi, Ms. Woung and Mr. Pant, as the three members of its "Team."  (Stringfield Decl. at ¶ 14.)  At www.ip-edge.com/contact/, IP Edge lists addresses in Chicago, Illinois and San Francisco, California as its locations.  (*Id.* at ¶ 15.)
[7] Missouri City is in the Southern District of Texas, not the Eastern District.

Plaintiff does not allege that it manufactures or sells any products or that it practices any alleged invention(s) claimed in the '427 patent.  (Compl. at ¶ 3.)  Plaintiff also does not allege that it has developed, marketed, manufactured or sold any products covered by said patent.  (*Id.*) Moreover, Plaintiff does not allege that it transacts any business in the Eastern District of Texas or that it has any documents, witnesses or other evidence relevant to its claims in this litigation located in the District, or anywhere in Texas for that matter.  (*Id.*)

## III.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), this Court may transfer this action for "the convenience of parties and witnesses" and "in the interest of justice" to any other district where this action might have been brought.  28 U.S.C. § 1404(a).  In this Circuit, once a district court determines that the proposed transferee district is one where this action could have been brought, it must then balance "private" and "public" interest factors to determine whether transfer is appropriate. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. Tex. 2008) (*en banc*) (*citing Gulf Oil Corp. v Gilbert*, 330 U.S. 501 (1947)); *see also In re TS Tech United States Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  None of the factors "can be said to be of dispositive weight."  *Id.* (citation omitted).  Moreover, the Fifth Circuit "clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."  *TS Tech*, 551 F.3d at 1320 (citing *Volkswagen*, 545 F.3d at 314 n.10).  If, after weighing the factors, the Court finds that Defendants have demonstrated that the proposed transferee district is a "clearly more convenient" venue, it should grant this Motion to Transfer.  *See id.*

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Volkswagen*, 545 F.3d at 315 (citation omitted).

The public interest factors are:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Id.*  (citation omitted).

## IV.   ARGUMENT

### A.   This Action Could Have Been Brought in the Northern District of California

The threshold question is whether the suit could have been brought in the Northern District of California.  *See Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-CV-511-CE, 2010 U.S. Dist. LEXIS 73972, at *8 (E.D. Tex. July 22, 2010).   This analysis only considers whether the transferee district has jurisdiction over the defendants, not the plaintiff.  *Id.* at *9 (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009)).  LeapFrog's, Small World's and VTech Electronics North America, LLC's accused products are sold throughout the United States, including within the Northern District of California.  *See* Section II.A, *supra*.  Thus the Northern District of California would have personal jurisdiction over these parties.  *See HTI IP, LLC v. DriveOK, Inc.*, No. 6:09-CV-370, 2010 U.S. Dist. LEXIS 82691, at **13-15 (E.D. Tex. Aug. 4, 2010) (Davis, J.) (finding that suit could have been brought in the Southern District of California where defendant's accused products were offered for sale there).  For the purposes of this action, VTech Holdings Limited will not contest personal jurisdiction or venue in the Northern District of California.  (Ex. AA, Pang Decl. at ¶ 8.)  Therefore, the Northern District of California would have jurisdiction over all of the Defendants and this suit could have been brought there.

7

**B.     The Private Interest Factors Favor Transfer to the Northern District of California**

**1.     The Relative Ease of Access to Sources of Proof**

The relative ease of access to sources of proof, such as documents and witnesses, weighs strongly in favor of transfer in this case.   The Federal Circuit instructs that in "patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. . . . [c]onsequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."   *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation omitted); *see also  HTI IP*, 2010 U.S. Dist. LEXIS 82691, at *7 ("This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues.").[8]

As discussed above, the preponderance of relevant evidence in LeapFrog and Small World's custody or control is located in or near the Northern District of California.   *See* Section II.A, *supra*.   The bulk of relevant evidence in VTech's control is located in northern Illinois and in Asia.[9]   *Id.*   None of the Defendants have any relevant evidence in the Eastern District of Texas.   *Id.*   Thus, the greater volume of the accused infringers' relevant documents is located in or near the transferee district and none is in the transferor district.   *See HTI IP*, 2010 U.S. Dist. LEXIS 82691, at *7.

---

[8] The instant case is distinguishable from the Court's recent decision in *i2 Technologies, Inc. v. Oracle Corp.*, No. 6:09-cv-00194, 2010 U.S. Dist. LEXIS 84250 (E.D. Tex. Aug. 17, 2010), wherein this factor was neutral because the plaintiff had to defend against patent infringement allegations brought by the defendant.  *Id.* at **8-9.   Here, none of the Defendants are asserting patents against Plaintiff.

[9]  VTech's Asia and Illinois-based evidence and witnesses will have to travel a great distance, whether the trial is in the Eastern District of Texas or in the Northern District of California; therefore, their locations do not impact the transfer analysis.  *See Genentech, Inc.*, 566 F.3d at 1344-45 (rejecting reliance on the "centralized location" of the Eastern District of Texas where, although potential witnesses resided in Europe, Iowa and the East Coast, a "substantial number of material witnesses reside[d] within the transferee district [the Northern District of California] and the state of California, and no witnesses reside[d] within the Eastern District of Texas.").

Regarding Plaintiff's evidence, as a non-practicing entity that has never designed, marketed or sold any product embodying the asserted patent—and was formed just four months before the litigation was filed—the extent of its relevant evidence is likely limited to documents regarding the prosecution of the asserted patent's application and any research and development leading up to said application.  All of the research and development leading to the '427 patent likely took place in Florida, where the only named inventor resided.  *See* Section II.B, *supra*.  All prosecution of said patent took place in Illinois, where the prosecuting attorney practiced and resided.  *See id.*     Therefore, it appears that any relevant evidence possessed by NovelPoint either presently resides in Florida or Illinois or at least originated there.[10]  To the extent any such documents are now located in this District, they are likely copies of documents that originated in Florida or Illinois and the originals or other copies may also still reside in those states.

 If Plaintiff claims to have evidence that was transported into Texas, it does not weigh against transfer.  *See Hoffmann-La Roche*, 587 F.3d at 1336-1337 (Fed. Cir. 2009) (finding that the tactical transport of 75,000 documents demonstrating conception and reduction to practice from California—where they would have resided but for the litigation—to the offices of its litigation counsel in Texas was "a fiction which appears to be have been created to manipulate the propriety of venue"); *HTI IP*, 2010 U.S. Dist. LEXIS 82691, at *7 ("[D]ocuments that have been moved to a particular venue in anticipation of a venue dispute should not be considered.") (citing *Hoffmann-La Roche*, 587 F.3d at 1336-1337).

Furthermore, although Plaintiff holds itself out as a Texas-based LLC with an address in the Eastern District, it actually appears to be merely a shell founded just four months before this

---

[10] Like VTech's Asia and Illinois-based evidence and witnesses, Plaintiff's Florida and Illinois-based evidence and witnesses will also have to travel a great distance, whether the trial is in the Eastern District of Texas or in the Northern District of California; therefore, their locations do not impact the transfer analysis either.  *See* Footnote 9, *supra.*

action was filed by three attorneys who are partners in a San Francisco (in the Northern District) and Chicago-based "IP monetization" firm.  *See* Footnote 6, *supra*; (Stringfield Decl. at ¶¶ 14-16.)  As explained above, Plaintiff does not appear to have ever practiced the asserted patent, have ever transacted any business in the Eastern District of Texas, or have any actual offices or employees there; its only connection to the district is that it happens to share an address with the Allen Texas residence of its attorney-officer, Mr Sanjay Pant.  *See id.*

The Federal Circuit recently addressed a similar situation in *In re Zimmer Holdings, Inc*. The *Zimmer* plaintiff shared its Texas office space with another of its trial counsel's clients and, on that basis, claimed that its Eastern District of Texas address was entitled to weight in the transfer analysis.  *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010).  The Federal Circuit disagreed, finding that the plaintiff's presence in Texas "appears to be recent, ephemeral, and an artifact of litigation."  *Id.*  The Federal Circuit therefore granted a petition for a writ of mandamus, ordering that the *Zimmer* matter be transferred to the defendant's home district.  *Id.* at 1382.

Thus, like the plaintiff in *Zimmer*, Novelpoint's "presence" in Texas is a fiction entitled to no weight, whereas the location of LeapFrog and Small World's headquarters and evidence in and near the Northern District of California strongly favors transfer.  *See id.*; *see also Software Rights*, 2010 U.S. Dist. LEXIS 73972, at *10 (finding this factor favored transfer, and ultimately granting transfer to the Northern District of California, where three out of five defendants' sources of proof were in California and the other defendants' evidence was scattered throughout the country).  This factor, therefore, strongly weighs in favor of transfer to the Northern District of California.

### 2.        The Cost of Attendance for Willing Witnesses

The cost and convenience of attendance for willing witnesses is an important factor.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in transfer analysis.").  The Fifth Circuit noted that "[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meals and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen*, 545 F.3d at 317 (quotation omitted).  Because the inconvenience to witnesses is proportional to distance from home, the Fifth Circuit established the "100-mile" rule, mandating that when "the distance between an existing venue for trial of a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (quotation omitted).

As explained above, none of Defendants have any witnesses in the Eastern District of Texas.  *See* Section II.A, *supra*.  On the other hand, there are hundreds of potential witnesses— mostly employees of LeapFrog and Small World—in and near the Northern District of California for whom a trial there would be much more convenient and cost efficient than a trial in the Eastern District of Texas.  *See id.*  Therefore, this factor also strongly favors transfer.  *See HTI IP*, 2010 U.S. Dist. LEXIS 82691, at *10 ("[T]his factor favors transfer when a 'substantial number of material witnesses reside in the transferee venue' and no witnesses reside in the transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses.") (quoting *Genentech*, 566 F.3d at 1344-45).

### 3.      The Availability of Compulsory Process to Secure the Attendance of Witnesses

Although at this very early stage in litigation, specific non-party witnesses with relevant information have not been identified, ex-employees of California-based LeapFrog and Small World who might have relevant information are much more likely to reside in California than in Texas.  *See* Section II.A, *supra*.  Moreover, ex-LeapFrog employees are likely to live within 100 miles of the Northern District of California, (*see* Ex. Y, Lattuga Decl. at ¶ 7), giving that court "absolute" subpoena power to compel their attendance at both trial and deposition.  *See Volkswagen*, 545 F.3d at 316; *see also Hoffmann-La Roche*, 587 F.3d at 1337.  In stark contrast, there are no known or suspected non-party witnesses in the Eastern District of Texas that this Court can compel.  *See* Sections II.A – II.B, *supra*.  This factor therefore also favors transfer.  *See Volkswagen*, 545 F.3d at 316 (finding that this factor favored transfer when the plaintiff's chosen venue lacks deposition subpoena power and any trial subpoenas would be subject to motions to quash).

### 4.      All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

There are no practical properties that would make either the Northern District of California or the Eastern District of Texas easier, faster or cheaper than the other.  *See In re Horseshoe*, 337 F.3d 429, 434 (5th Cir. 2003) (finding this factor is only applicable "in rare and special circumstances" and only if "such circumstances are established by clear and convincing evidence").  This motion is being filed at the very outset of this case, shortly after three of the four Defendants filed their Answers, (*see* Dkt. Nos. 30, 37, and 39), and transfer should therefore not pose any significant burden or result in any delay.  *Rich v. S. Gulf Operators*, 879 F. Supp. 49, 51 (E.D. Tex. 1995) ("Additionally, the case is in its early stages, so there is little chance that a transfer of venue would create appreciable delay or prejudice.").  Moreover, there are no

12

duplicative suits involving the same or similar issues in either district.  *See HTI IP*, 2010 U.S. Dist. LEXIS 82691, at **10-11.  This factor is therefore neutral.

### C.    The Public Interest Factors Also Favor Transfer to the Northern District of California

#### 1.    The Local Interest in Having Localized Interests Decided at Home

This case has no relevant factual connection to the Eastern District of Texas.  *See* Sections II.A – II.B, IV.B.1., *supra*.  As discussed above, while NovelPoint purports to have a place of business in the Eastern District, it is based out of the home of one of its attorney-principals and does not appear to have any real substantive existence in the District beyond what appears to be a vehicle for venue manipulation.  *See* Section IV.B.1., *supra*.  Thus, NovelPoint's Texas address does not create a local interest in the Eastern District of Texas.  *See Zimmer*, 609 F.3d at 1381 ("Aside from uncorroborated contentions that [Plaintiff] has its principal place of business in Texas, it is undisputed that all of [Plaintiff's] research and development, and patent prosecution work took place in Michigan. . . . there is no indication that [Plaintiff] has any employees in Texas. . . . [Plaintiff] therefore has no presence in Texas that should be given weight in the transfer analysis.").

Defendants' actions similarly fail to create a local interest in Texas.  Plaintiff alleges that venue is proper in the Eastern District because each of the Defendants "has conducted business in the state of Texas, and/or has engaged in continuous and systematic activities in the state of Texas" and because "Defendants' products that are alleged herein to infringe were and continue to be made, used, imported, offered for sale, and/or sold in the Eastern District of Texas." (Compl. at ¶¶ 4-8.)  However, none of Defendants' products are made in the Eastern District of Texas and, to the extent that they are "used, imported, offered for sale, and/or sold" in the District, they are also "used, imported, offered for sale, and/or sold" throughout the United

13

States.  *See* Section II.A, *supra*.  The fact that Defendants' products are sold within the Eastern District is not sufficient to establish a local interest there because, "when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue."  *HTI IP*, 2010 U.S. Dist. LEXIS 82691, at *12 (citing *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009)).

On the other hand, the citizens of California have a strong local interest in this case. LeapFrog is headquartered in the Northern District of California and employs approximately 350 employees who live within the district. (Ex. Y, Lattuga Decl. at ¶3.)  Small World is also headquartered in California, in the adjacent Central District of California, and has employees who live within that district. (Ex. Z, Dey-Dunlop Decl. at ¶3.)  As such, the local interest of the citizens of California, and those in the Northern District in particular, is strong because this case "calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."  *Hoffmann-La Roche*, 587 F.3d at 1336.  (finding the local interest factor favored transfer where documents and witnesses were located in the transferee district and in the adjacent district).  This factor strongly favors transfer.

### 2.    The Administrative Difficulties Flowing From Court Congestion

Although this factor "appears to be the most speculative and case-disposition statistics may not always tell the whole story," the Federal Circuit noted that "to the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor."  *Genentech*, 566 F.3d at 1347.

Judicial Caseload Profiles from www.uscourts.gov indicate that in 2009 (the most recent year available), the average time from filing to disposition was 9.4 months in the Northern District of California and 10.8 months in the Eastern District of Texas.  (Stringfield Decl. at ¶¶

26-27.)   The average time from filing to trial was 24.5 months in the Northern District of California and 25.0 months in the Eastern District of Texas.  (*Id.*)  According to these statistics, this case might reach disposition or trial slightly faster in the Northern District of California than in the Eastern District of Texas.  This factor, therefore, slightly favors transfer.

### 3.      The Familiarity of the Forum With the Law That Will Govern the Case

This factor is neutral, as "[b]oth the Northern District of California and the Eastern District of Texas are familiar with patent law." *See Software Rights*, 2010 U.S. Dist. LEXIS 73972, at *17.

### 4.      The Avoidance of Unnecessary Problems of Conflicts of Laws or In the Application of Foreign Law

No conflict of laws issues are expected in this case, so this factor does not apply.  *See id.*

## V.   CONCLUSION

The Northern District of California is a "clearly more convenient" forum than the Eastern District of Texas.   The location of sources of proof in and near the Northern District of California, the relative cost of attendance for willing witnesses in the Northern District of California compared to the Eastern District of Texas, the availability of compulsory process by the Northern District of California to secure witness attendance, and the strong local interest in the Northern District of California all favor transfer.   The other factors are neutral or inapplicable.   Therefore, Defendants' motion should be granted and this case should be transferred to the Northern District of California.

Respectfully submitted,


/s/  Daniel S. Stringfield                    /s/ Theodore T. Herhold

Darby V. Doan                                 Theodore T. Herhold
Texas Bar No. 08809050                        CA State Bar No. 122895
Morgan D. Vaughan                             ttherhold@townsend.com
Texas Bar No. 24060769                        TOWNSEND AND
HALTOM & DOAN                                 TOWNSEND AND CREW
6500 Summerhill Road, Suite                   LLP
100                                           379 Lytton Avenue
Texarkana, Texas 75503                        Palo Alto, CA 94301
(903) 255-1000                                Tel.: (650) 326-2400
(903) 255-0800 facsimile                      Fax: (650) 326-2422

Richard E. Dick                               Attorney for Defendants-
James R. Nuttall                              Counterclaimants,
Daniel S. Stringfield                         LEAPFROG ENTERPRISES,
MCANDREWS, HELD &                             INC.
MALLOY, LTD.
500 West Madison Street,
34th Floor
Chicago, Illinois 60661
(312) 775-8000
(312) 775-8100 facsimile

Attorneys for Defendants,
VTECH HOLDINGS
LIMITED, and Defendants-
Counterclaimants, VTECH
ELECTRONICS NORTH
AMERICA, LLC

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  All other counsel of record will be served by certified mail, return receipt requested, this 27th day of August, 2010.

*/s/ Daniel S. Stringfield*
Daniel S. Stringfield

**CERTIFICATE OF CONFERENCE**

Counsel for Defendants has conferred with counsel for Plaintiff in a good faith attempt to resolve this matter without court intervention; however, Plaintiff is opposed to this motion.

*/s/ Daniel S. Stringfield*
Daniel S. Stringfield